IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DEMETRIUS ALEXANDER BROWN, | CASE. NO. |
| PETITIONER, | LOWER COURT WARRANT NO.(S): 2018A4310100670, 2018A4310100681, 2018A4310100682, 2018A43 10100696, AND 2018A4310100697 |
| V. | |
| STATE OF SOUTH CAROLINA, | |
| SHERIFF ANTHONY DENNIS, | MOTION TO DISMISS FOR VIOLATION OF |
| RESPONDENT(S). | CONSTITUTIONAL DUE PROCESS AND SPEEDY |
| | TRIAL PROVISIONS UNDER THE SIXTH AND |
| | FOURTEENTH AMENDMENTS AFFORDED |
| | UNDER 28 U.S.C. § 2241 |

NOW COMES DEMETRIUS ALEXANDER BROWN, the above named petitioner in the above styled Pro Se and [AMICUS CURAE] filing and submitting this hereby foregoing "Motion to Dismiss For Violation of Constitutional Due Process and Speedy Trial Provisions Under the Sixth and Fourteenth Amendments Afforded Under 28 U.S.C. § 2241," in compliance with the U.S. Constitution, Sixth Amendment, in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, Fourteenth Amendment, No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;

— 1 —

and in compliance with guaranteed rights afforded under 28 U.S.C. § 2241; Habeas relief for detention arising out of custody under color of federal law, a federal court judgement, or detention in violation of the federal constitution and pursuant to 28 U.S.C. § 2241 (c)(3) in which I am entitled to challenge my state pre-trial detention as a "violation of the Constitution or laws or treaties of the United States."

## CASE HISTORY FACTS AND TIMELINE

① On Aug. 11, 2018 I was at a place of business that I have business dealings with when my truck was blocked in by another vehicle then the three persons in the vehicle got out and surrounded my truck with two being at the rear of my truck and one approaching my driver's door demanding my exit armed in which I complied and a struggle ensued with this person over his weapon and the person being shot with his own weapon during this struggle and once I gained control of the weapon the person started back pedaling toward his vehicle which was blocking my truck in and I feared he was attempting to retrieve another weapon so I fired his weapon two more times into the person and when I realized that the person was no longer a threat I dropped his weapon and retreated from the scene to a place of safety in fear of not knowing where the other two persons that came with him may be and not knowing what plan of attack they may attempt due to the fact when I was struggling with the other persons weapon and it first went off the other two persons had ran off toward the back of the shop area. As I was leaving the scene I called my retained attorney from a previous unrelated and non-violent case Ms. Deborah Butcher about the situation and I was instructed to report to her

— 2 —

office so I could turn myself in and I then told her I needed to tie some loose business ends up real quick and could she make arrangements for me to turn myself in, in a couple of days and she said she would head out to the scene to take to some of the witnesses and will call the Sheriff about turning myself in and that she would call me back in a few. On Jan 8, 2020 my court appointed attorney Timothy L. Griffith filed a Motion to Dismiss And Motion For Hearing under Duncan on Immunity By Self Defense /Stand Your Ground pertaining to these events which the Court still haven't heard to the date of this Motion which is now over 14 months of delay, (PLEASE REFER TO EXHIBIT M).

(2) On Aug. 12, 2018, Atty. Deborah Butcher called me back and informed me that she had spoken to the witnesses and took formal statements and that my case was a good case for a stand your ground defense and she told me she had spoken to Sheriff Anthony Dennis as well and that she had made arrangements for me to turn myself in on Fri. Aug. 17, 2018 at 10AM and then she quoted me a price she would represent me for and I told her I had to complete my last delivery and I would try to get her money. But, even though she made arrangements for me to turn myself in on Aug. 17, 2018, Sheriff Dennis still had multiple town hall meetings on Facebook and news conferences attacking my way of life and religion as a Moor and a Muslim stating that I was armed and dangerous when this was an isolated incident and the weapon wasn't even mine and he also stated that as a part of the Moor way of life that we didn't abide or respect the laws of the land and that we were considered domestic terrorists

—3—

and I had multiple connections in the North and Southeast of the United States.

③ On Aug. 15, 2018; after completing my last delivery and dropping off my truck I was apprehended on I-95 N in route back to South Carolina to turn myself in on Aug. 17, 2018 in an Uber by the US Marshals in Jacksonville, Florida and I was transferred to Duval County Jail awaiting extradiction back to South Carolina.

④ On Aug. 16, 2018 I was brought before the Court in Duval County, Jacksonvllle, Florida for first appearance where I signed a waiver for extradiction to be extradicted back to South Carolina as soon as practical.

⑤ On Aug. 17, 2018 I was picked up at the Duval County Jail in Jacksonville, Florida by the Sumter County Sheriff's Office to be extradicted back to South Carolina; once I was booked into the Sumter-Lee Regional Detention Center (S.L.R.D.C.) I was served with five warrants two for forgery, one for Murder, one for unlawful possession of a firearm, and one for unlawful possession of a firearm during a violent crime.

⑥ On Aug. 18, 2018 I went to first appearance for the five warrants I was served the day before at the S.L.R.D.C. and my bond was denied.

-4-

⑦ On Aug. 21, 2018, I was served with a warrant for violation of probation due to my new pending charges. I was on probation for a Lee County case charging me with Presenting False claim For insurance payment value less than $10K in which I received a 5 years suspended to 2 years of probation in April 2018 before the Honorable Judge Cothrane in Sumter County.

⑧ IN Sept. 2018 the court appointed Timothy W. Murphy, Sumter County's Chief Public Defender to me and my case.

⑨ On October 15, 2018 Chief Public Defender Timothy W. Murphy filed a Request and Motion Under Rule 5 for Discovery Motion pursuant to Brady And Written Objection UNDER RULE 6 to the solicitor of the Third Judicial Circuit and It was recorded on Oct. 15, 2018 at 11:37Am in the Sumter County Clerk of Court. (Please refer to Exhibit A).

⑩ On Oct. 16, 2018 I had my probation Administrative Hearing for my probation violation at the S.L.R.D.C. and the case was bounded over to general sessions court.

⑪ On Oct. 17, 2018 I was visited by public defender Phillip Little, Jr. at the S.L.R.D.C. notifying me that he was appoint by the Court to represent me on the probation violation in general sessions court.

⑫ On Nov. 9, 2018 I was brought before the Honorable Judge

-5-

Cothrane In general sessions court to be heard on my probation violation In which public defender Phillip Little, Jr. requested that the Court hold my hearing in obeyience until the disposition of my pending charges in which I was being violated for In the first place, but Judge Cothrane denied his request on behalf of probation and fully revocated my five years suspend sentence.

(13) On Nov. 16, 2018 I was transfered from the S.L.R.D.C. to South Carolina Department of Corrections (S.C.D.C.) for the five years suspended sentence for my probation violation with an active detainer lodged against me for the disclosed pending charges by the Sumter County Sheriff's Office (S.C.S.O.).

(14) In Dec. 2018 I was brought from S.C.D.C. to the Sumter County Summary Courthouse to be heard before Magistrate Judge Griffin for my preliminary hearing on the disclosed pending charges and all charges were bounded over to General Sessions Court, this was also the first time I met Timothy W. Murphy the Chief Public Defender appinted to me In person whom was representing me on the disclosed pending charges and I informed him while in court of Atty. Butcher interviewing the witnesses herself.

(15) On Jan 4, 2019 warrant No. (5) 2018A4310100670, 2018A4310 100696, and 2018A4310100697 were Inducted; 140 Days after warrant No. 2018A4310100670 was Issued on Aug. 11, 2018 and 135 PAYS after warrant No. (5) 2018A4310100696 and 2018A4310100697 were Issued on Aug. 16, 2018,

—6—

(16) Around the second week of Jan 2019 I was finally classified as a MI-3 due to the active detainer for the disclosed pending charges from the S.C.S.O. and I was transfered to Lieber State Prison a level 3 maximum prison in S.C.D.C. to serve my probation violation 5 year sentence, in which if it wasn't for the active S.C.S.O. detainer I would have been classified as a MR-1B minimum custody and would have been transfered to a Level 1 prison work release prison in S.C.D.C. to serve my probation violation 5 year sentence for the non-violent offense of Presenting False Claim for insurance Payment value less then #10K.

(17) At the end of Jan. 2019 while at Lieber State Prison I received a letter from Public defender Timothy W. Murphy dated Jan. 31, 2019 alledging that he spoke with Ms. Butcher about my case and she indicated that she simply spoke to some of the witnesses, but did not take formal statements. And that he was in the process of hiring a private Investigator for my case and that he ████████████████████ recently received discovery and will visit me after he had time to study it. (Please refer to Exhibit B).

(18) IN FEB. 2019 I spoke with Atty. Butcher from Lieber State Prison and informed that my family were still trying to come up with her retainer so she could be my attorney of record on the disclosed pending charges and I informed her of what Chief Public Defender Timothy W. Murphy had wrote me and she informed me that she never told him that she didn't have formal statements

-7-

from the witnesses and that last she checked they still didn't have any discovery in my case ready as of yet, so she had no clue what Mr. Murphy was refering to.

(19) On April 25, 2019 Asst. Solicitor Bronwyn K. McElveen sent a Rule 5 Disclosure and Motion For Reciprocal to Chief Public Defender Timothy W. Murphy on my behalf for warrant no(s): 2018A4310100681 and 2018A4310100682 only; and he filed an acceptance of service on Apr. 26, 2019. (Please Refer to Exhibits C and D).

(20) On May 29, 2019 warrant no. (s) 2018A4310100681 and 2018 A4310100682 were inducted; 289 days after they were issued on Aug. 14, 2018.

(21) In AUG. 2019 I was granted parole by the State of South Carolina Dept. of Parole, Probation, and Pardons.

(22) On Sept. 16, 2019 I was released on parole from Lieber State Prison in SCDC to the custody of the SCSO for my active detainer for the disclosed pending charges and transfered back to the S.L.R.D.C. where after I was booked in and took my booking photo with my religious headwear on, It was confisicated and placed in my personal property and I was denied to ▓▓▓ wear my religious headwear in their facility per their alleged policy; when I was always permitted to wear my religious headwear when being transfered from SCDC as well as at other South Carolina pretrial detention centers and jails

while I was in federal transit as well as while I was in the FBOP
and not one of these facility's ever confiscated and denied me
the right to wear my religious headwear and when I asked to be provided
with a copy of the facility's policy pertaining to religion, I was told
that It was restricted to I/m's because it was a security threat
to their ofc's and the facility if I/m's were permitted to view their
policy. I was also forced to remove foods I was allergic to off
of my trays and denied a substitution foods when other I/m's
foods were being substituted for their allergies in which it's been
documented with medical and Food Service of all my food allergies.
(Please Refer to Exhibit E).

(23) In Sept. 2019, after I got back to the Sumter-Lee Regional
Detention Center (S.L.R.D.C.) I filed a motion for Nelson
Hearing to remove Chief Public Defender Timothy W. Murphy off of
my case and on Sept. 23, 2019 he visited me at the S.L.R.D.C.
and had my motion to remove him off of my case in his hand
and he asked what was the purpose of this and I told him that
he's been my attorney for over a year and I only saw and spoken
to (once) ~~ ~~ and that was at my preliminary hearing during
court for like five minutes if that and that he lied in his letter to
me about Ms. Butcher not taking statement from the witnesses and
about him having my discovery at the time and coming to see me
at the prison, when he didn't get any discovery in my case
until April 25, 2019 three months after his letter to me and
it was for the two forgeries only and that he must be still

—9—

Studying it because I still don't have a copy of it and he never came to visit me in prison to go over it, and he then gave me a copy of the discovery he had which was for the two ▓▓▓ forgeries only and he asked what else I wanted and I told him I wanted a bond because I never got brought up for one and he told me he would put me in for a bond hearing and let me know the date so that I could have my family and witnesses on my side there. (PLEASE REFER TO EXHIBITS B, C, AND D).

(24) On Oct. 10, 2019 I was transfered to the Sumter County Courthouse from the S.C.R.D.C. for a bond hearing before Judge Hymen an out of Circuit Judge from Horry County in general sessions court with Chief Public Defender Timothy W. Murphy neglecting to notify me of this court date so that I could have my family and witnesses on my behalf in court for my defense and support when the victims family was conviently notified due the fact they were in the courtroom along with one of the case investigators, Inv. Bonner and asst. Solicitor Bronwyn McElveen whom stated that I had been sentenced before her several times, when I only had one case with her, she stated that I fought extradiction to come back to South Carolina to face the disclosed pending charges, when I was apprehended in florida by the US Marshals and I willigly signed the waiver for extradiction and was extradicted the day after my first appearance in court in Florida; and that I took ▓▓▓ Georgia authorities on a high speed chase and eluded them and that she had positive ID via authorities Body cams, when I was never apprended by Georgia authorities to prove positive ID nor was I ever charged with

— 10 —

eluding any authorities whatsoever, and the Judge allowed the victim's family to speak and then he denied my bond ever after Public Defender Timothy W. Murphy stated to the Court that my case had good merits of a self-defense / stand your ground case.

(25) On Oct 11, 2019 a private investigator for Timothy W. Murphy come to visit me at the S.C.R.D.C, and after I was done interviewing with him I returned back to my pod and was talking to my roommate Corey Brown and was explaining to him what had transpired in Court the day before and he asked me why would my public defender the Chief Public Defender in Sumter County at the time bring me up before Judge Hyman when Judge Hyman doesn't grant bonds when he's out of his circuit and I asked what he was talking about and he showed me a letter from his public defender Michael D. Ruitzong dated on Oct. 8, 2019 telling Corey that he didn't try to move for a bond this term since it would have been denied because Judge Hyman will not grant any bonds and he would have to wait another 180 days passed before he could go back for a bond. My public defender Timothy W. Murphy was the Chief Public Defender of Sumter County at this time and was Corey's public defender Michael D. Ruitzong's boss so there's no possible way that Mr. Murphy didn't know this information, so I immediately called the public defender's office to ask Mr. Murphy what was going on and why did he bring me before this Judge who doesn't grant bonds when he's out of his circuit and why wasn't I notified so my family and witnesses could speak on my behalf in Court and he told me that he

—11—

couldn't talk to me because he was no longer my attorney due to a conflict discovered within his office and asked him so after you don't notify me of my bond hearing in front of a judge who does not grant bonds, my bond gets denied, you've been on my case for over a year, and you send a private investigator to interview me today now you tell me your conviently not my attorney anymore and he says nothing a just hung up on me. (Please Refer to Exhibit F).

(26) On Oct. 22, 2019 I submitted and served a Notice and Motion to Dismiss to the General Sessions Court and to the Office of the Solicitor for the Third Circuit for the dismissal of the disclosed pending Charges. (Please Refer to Exhibit G),

(27) On Oct. 24, 2019 I received a letter from public defender Phillip D. Little, Jr. whom was the public defender on my probation violation I had just paroled out on the month before and he told me in the letter that due to some reorganization in the office he was now my new public defender, so I immediately called the public defender's office and told him that my case was assigned to his boss Timothy W. Murphy for over a year and that I had just spoke to Mr. Murphy on Oct. 11, 2019 and he told me that he was no longer my attorney due to a conflict discovered within his office; so there was no way possible that he could be my new public defender, because there was a conflict discovered within their office and Mr. Phillip D. Little, JR. told me he'll check into it and get back with me as soon as he could. (Please Refer to Exhibit H).

(28) On Nov. 8, 2019 I received a letter from Jack D. Howle Jr. the new Third Circuit Public Defender that was actually a copy of a letter that was sent to Atty. Timothy L. Griffith, Attorney at Law informing him that he was being appointed to represent me on the disclosed pending charges pursuant to the contract between him and the South Carolina Commission on Indigent Defense (SCID). (Please Refer to Exhibit I).

(29) On Nov. 14, 2019 when I didn't get a response back in regard to the Notice and Motion to Dismiss I filed and submitted to the court and the Solicitor's Office in Oct. 2019; I filed and submitted a Motion For Proper Relief to the Court of General Sessions and the Third Judicial Circuit Solicitor's Office. (Please Refer to Exhibit J).

(30) On Dec. 11, 2019 I filed and submitted a Motion For Speedy Trial to the Court of General Sessions and the Third Judicial Circuit Solicitor's Office. (Please Refer to Exhibit K).

(31) On Dec. 18, 2019 I received a letter from Chief Public Timothy W. Murphy informing me again that he was no longer my attorney of record due to a conflict discovered within their Office and that my case was assigned to one of their ~~Sumter~~ Sumter County Contract Attorneys, Timothy L. Griffith and ~~~~ on this same day I received an attorney visit from Atty. Timothy L. Griffith at the S.L.R.D.C. and he provided me with a completed copy of the Private Investigation

-13-

Report from Inv. John Davis whom was hired by Mr. Murphy and whom come to visit me on Mr. Murphy's behalf on Oct. 11, 2019 at the S.L.R.D.C. and Atty. Griffith told me based on what he had, the Investigation Report and discussions with Mr. Murphy and Mr. Davis the private investigater he believed I had a good self-defense/stand your ground case and that he'll be back to visit me after the 2020 New Year come in. (Please Refer to Exhibit L).

(32) On January 8, 2020, Atty. Timothy L Griffith came to visit me at the S L R D C and provided me with the Motion to Dismiss And Motion For Hearing Under Duncan on Immunity BY SELF DEFENSE/ Stand Your Ground he had just filed with the Court and served upon the Solicitor's Office and then we went over my case and he explained to me what to expect at the hearing within the next thirty to sixty days. When he was about to leave he told me to stop filing Motions with the Court because he's been contacted about all my motions by the clerk of court office and Mr. Griffith said they consider them all frivilous due to the fact there is no hybrid representation in the State of South Carolina, then he told me he'll see me one more time before the hearing. When I got back to my Pod at the S. L. R. D. C. I called the clerk of court and Deputy Clerk of court Pam Hayneswarth answered and I asked why wasn't my motions filed with the court on my disclosed pending charges and she said that there is no hybrid representation in the State of South Carolina meaning I couldn't file motions on my own behalf when I was represented by an appointed attorney either I had

—14—

them file the motion themselves or I would have to represent myself for my motions to be filed with the Court. (Please Refer to Exhibit M).

(33) On or around March 20, 2020 the Sumter County Court closed due to COVID-19 restrictions and at this time I still haven't been brought before the Court to be heard on Atty. Timothy L. Griffith's motion to Dismiss and motion to Dismiss and motion for Hearing under Duncan on Immunity By Self Defense/Stand Your Ground filed on Jan. 5, 2020, 71 days earlier almost two and a half months ago. (Please Refer to Exhibit M).

(34) IN April 2020 the Sumter County Court was still closed to the people of the public due to COVID-19 restrictions, but it had switched to conducting Court for the pre trial detainees via a tablet and the zoom app; So on April 3, 2020 I submitted a Notice of motion and motion For Emergency Bond Reconsideration in Consideration of COVID-19 Pandemic and served a copy on the Solicitor of the Third Judicial Circuit Ernest A. Finney, III. (Please Refer to Exhibit N).

(35) IN JUNE 2020 ATTY. TIMOTHY GRIFFITH took me before the Honorable Judge Griffin in General Sessions Court for a Bond Hearing via the facility's tablet on the Zoom app and MR. Griffith explained to the Court that he had filed a motion under Duncan on my behalf to be heard on Jan. 5, 2020 and to this date it still hasn't been heard and he felt strongly that my case was a great self defense/stand your ground case and explained that when I was apprehended in Florida on I-95 N that I was en route to turn myself in on Aug. 17, 2018 @ 10AM due to Atty. Deborah Butcher

Setting this arrangement up with Sheriff Dennis and he explained to the court that I've been incarcerated almost two years at this time and Inv. Scott Bonner told the Court he had no Knowledge of any of this implying the story was fabricated and Asst. Solicitor Bronwyn McElveen stated to the court that two years incarcerated on Murder charge was not a longtime and Mr. Griffith said It was if the Murder was justified by stand your ground and self-defense in which he believed was the situation in my case and Judge Griffin then denied my bond and stated that if I wasn't heard on the Duncan Motion in 90 days then he'll grant me a bond in which It has been 9 months at the date of this foregoing Motion since this bond hearing before Judge Griffin and after this hearing I submitted another Motion For Speedy and served it upon the solicitor's office and I still haven't been heard on Atty. Griffith's Duncan Motion, any of my speedy trial motions, or granted a bond as of yet. (Please Refer to Exhibit K, M, and O).

(36) IN Aug. 2020 I was reclassified to a Max classified I/m at the S.L.R.D.C. and due to the fact the facility doesn't have a pod for their Max, Medical, and Juvenile classified I/m's we are forced to be housed in B-POD (Smu) lock-up with the facility's disciplinary sanctioned classified I/m's and we are treated the same as a disciplinary sanctioned classified I/m with no priviledge of television and only being permitted one hour of rec time three days a week (Mon., Wed, and Fri.), in which we have to choose from showering, using the phone, outside rec, or using the Kiosk for no other reason then us being classified as a Max, Medical, or Juvenile classified I/m and the facility not having another Pod to house us and the facility states their policy state that every I/m housed in B-POD(Smu) must be treated like this as well as being

-16-

t-chained and shackled up whenever we are permitted out of our cells,
when the Max, Medical, and Juvenile classified I/m's have not committed
any disciplinary Infraction to be treated as if we're disciplinary which is
discriminatory toward the Max, Medical, and Juvenile classified I/m's
when the Med, Federal, Trustie, and women classified I/m's are permitted
the priviledge of daily television use, daily phone use, daily showers,
daily outside rec, and daily Kiosk use from 8AM to 12:30pm, 2:30pm
to 4:30pm, and 7pm to 11pm seven days a week and the fact sentenced
Super Max and Death Row I/m's of the State of South Carolina receive on
hour of rec daily seven days a week with the priviledge of television,
when we as pre-trial detainees are being unusally punished, discriminated
against, and treated like this solely based on our classification as Max,
Medical, and Juvenile classified I/m's,

(37) In Oct. 2020 my family were finally able to finish retaining
Atty. Deborah Butcher to represent me on the disclosed pending charges
and she offically became my attorney of record on warrant no.(s)
2018A4310100670, ~~2018~~ 2018A4310100696, and 2018A4310100697
only, while Atty Timothy L. Griffith is still my attorney of record on my
two forgeries warrant no(s) 2018A4310CC681 and 2018A4310C0682.

(38) In Jan. 2021 the S.L.R.D.C. received a new director, Dir. Ray
who on March 5, 2021 implimented a new rule exclusively for B-POD (smu) I/m's
in which we are denied our meals as a term of punishment for having our
cell door windows or lights covered up in our cells.

-17-

㊴ On March 16, 2021 via Zoom video Conferencing from the Sumter-Lee Regional Detention Center I was brought before the Honorable Judge R, Ferrell Cothrane, Jr. for a bond hearing by my retained and new attorney of record Ms. Deborah Butcher of the Camden Law Firm and on the screen the head Solicitor Ernest A. Finney, III of the third Judicial Circuit whom is also known to and friends of the victim's family in my alleged murder case through the victim's sister "BOO" whom is employed with Sumter County and works at the Sumter County Sheriff's office stated that he was taking over my case from the assigned ~~asst.~~ asst. solicitor Bronwyn K. McElveen intentionally and purposely neglecting that this would be a conflict of interest to my case and he asked that my bond be denied due to the fact that court was opening back up in April 2021 for trials and that I would be the first on the trial docket, then Ms. Butcher stated that I had already been incarcerated for three years on these charges been violated on probation for these charges and sent to prison on the violation then paroled out on the violation back to the county after a year to face these charges and that since I was on parole I shouldn't be a flight risk because I had a high supervised plan through parole and Judge Cothrane then asked how did I get violated and sent prison and I stated that he Judge Cothrane violated me and sent me and he didn't respond to my answer and Ms. Butcher informed him that Judge Griffin stated to Atty Griffith that if my duncan hearing wasn't heard in 90 days that I would be granted a bond the next time I was up and Judge Cothrane ~~asked~~ asked was Ms. Butcher ready for the Duncan hearing now and Mr. Finney, III said he was ready and Ms. Butcher said it wouldn't be fair to me because she couldn't locate any of our witnesses that were ready when Atty. Griffith had my case and that she had ten days before trial to make a decision and then Judge Cothrane said ~~my~~ bond was denied until there was a change of circumstances in my case

-18-

(40) On March 11, 2021; I filed and submitted a "Motion To Dismiss For Violation of Constitutional Due Process and Speedy Trial Provisions", to the Supreme Court of South Carolina, exhausting my state administrative remedies in this case; and on March 22, 2021 I received correspondence from the Supreme Court of South Carolina Clerk of Court Daniel E. Shearouse stating that since I am represented by counsel in these matters, no action will be taken on my pro se filing; citing Miller v. State, 388 S.C. 347, 697 S.E. 2d 527 (2010); Jones v. State, 348 S.C. 13, 558 S.E. 2d 517 (2002); State v. Stuckey, 333 S.C. 56, 508 S.E. 2d 564 (1998); Foster v. State, 298 S.C. 306, 379 S.E. 2d 907 (1989); and also stating that since I was represented by counsel in this matter, they were forwarding a copy of my motion to my counsel for any assistance he/she can give me. But, the Clerk of Court cc'd everything not only to my attorney of record Atty. Deborah J. Butcher as said, but also to the Solicitor in my case Bronwyn K. McElveen, asst. Solicitor of the third judicial Circuit, and to Atty. Timothy W. Murphy the Chief Public Defender who has not been an attorney of record on my case since Oct. 2019 over a year and a half ago due to a conflict within his office. (Please Refer to Exhibit P).

## LEGAL AUTHORITY AND CONSTITUTIONAL LAW WITH ARGUMENTS

① The criteria for evaluating speedy trial claims is founded in Barker v. Wingo, 407 U.S. 514, 530. ① Extraordinary lags in time 17 months and longer (102 months / 8½ years was six times this in Doggett v. US. (1991)) clearly suffices to trigger the speedy trial enquiry; ② When the government is to blame; ③ Asserting due course right to a speedy trial; and ④ Negligent delay presumptively prejudices ability to adequate defense.

In Barker v. Wingo, 407 U.S. 514, 532 (1972), the Court asserted that the Clause asserted that the Speedy Trial Clause was "designed to protect" three basic interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." All three of these basic interests were clearly violated in my case. See also Smith v. Hooey, 393 U.S. 374, 377-378 (1969), U.S. v. Ewell, 383 U.S. 116, 120 (1966), In Barker the Court went so far as to declare that of these three interests, "the most serious is the last; because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S., at 532, Barker explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." 407 U.S., at 532. And through time can tilt the case against either side; at 521; Loud Hawk, supra, at 315, one cannot generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify, while such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, see Loud Hawk, supra, at

315, It is part of the mix of relevant facts, and its importance increases with the length of delay. (U.S. v. MacDonald 456 U.S. 1, 7 (1982), that a defendant may invoke due process to challenge delay both before and after official accusation.) The Due process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings. See United States v. Lovasco, 431 U.S. 783 (1977). As the Court explained in Marion v. U.S., 404 U.S. 307, "the Due Process Clause ... would require dismissal of [an] indictment if it were shown at trial that [a] delay ... caused substantial prejudice to a [defendant's] right to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." 404 U.S., at 324. See also MacDonald, 456 U.S., at 8 ("THE SIXTH AMENDMENT RIGHT to a speedy trial.S. ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations).

The Speedy Trial Clause also protects an accused from two additional harms; ① prejudice to his ability to defend him caused by the passage of time; and ② disruption of his life years after the alleged commission of his crime. The Speedy Trial Clause's core concern is impairment of liberty. U.S. v. Loud Hawk, 474 U.S. 302, 312 (1986). Whenever a criminal trial takes place long after the events at issue, the defendant may be prejudiced in any number of ways. The clause is directed not generally against delay-related prejudice, but against delay related prejudice to a defendant's liberty. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial,

-20-

Impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. U.S. v. MacDonald, 456 U.S. 1, 8 (1982). A lengthy pretrial delay, of course, may prejudice an accused's ability to defend himself. But, the Court has explained, prejudice to defense is not the sort of impairment of liberty against which the Clause is directed. "Passage of time," whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. Even though a defendant may be prejudiced by a pre-trial delay, and even though the government may be unable to provide a valid justification for that delay, the Clause does not come into play [unless] the delay impairs the defendant's liberty.

(2) As the case history time-line reveals it's been over 31 months at the time of this Motion and time is still counting from the issuance of the warrants in this case to present date, and depending on the nature of the charges, the lower Courts have generally found past accusation delay "presumptively prejudicial" at least as it approaches one year. On or around Jan. 4, 2019 warrant no(s) 2018A4310100670, 2018A4310100696, and 2018A4310100697 were ~~indicted~~ indicted, 140 days after warrant No. 2018A4310100670 was issued on Aug. 11, 2018 and 135 days after warrant no.(s) 2018A4310100696 and 2018A4310100697 were issued on Aug. 16, 2018 without any written extensions and on or around May 29, 2019 warrant no.(s) 2018A4310100681 and 2018A4310100682 were indicted 289 days after they were issued on Aug. 14, 2018, without any written extensions.

Accordingly, under the S.C. Rules of Criminal Procedure Rule 3, Disposition of Arrest warrants section (c) Action on warrant [within ninety (90) days] after ~~(ninety)~~ receipt of an arrest warrant from the clerk of Court the solicitor [shall] take action the warrant by (1) preparing an indictment for presentment to the Grand Jury, which indictment shall be filed with the clerk of court, assigned a criminal case number, and presented to the grand jury, (2) Formally dismissing the warrant noting on the face of the warrant the action taken; or (3) making other affirmative disposition in writing and filing such action with the Clerk of Court; Section (d) Extensions of time. The Solicitor may petition the Circuit Court for an order delaying action on the warrant, as set forth above, for successive Ninety (90) days periods if the Circuit Court specifically find a good cause for such delay for each successive ninety day period.

But, all of this was intentionally and purposely neglected by assh Solicitor Bronwyn McElveen and Solicitor Chip Finney for the third Judicial Circuit whom neglected to file any petition for an order delaying action on any of my warrants.

Moreso, Criminal Rule and Former Circuit Court Rule 95 requiring solicitor to act within 90 days after receipt of an arrest warrant from the Court is administrative and nonjurisdictional, and failure of solicitor to act upon warrant within 90 days, as required by Rule 95, therefore did not by itself invalidate warrant or prevent subsequent prosecution, although such failure [would] subject solicitor to contempt proceedings. State v. Culbreath (1984) 282 S.C. 38, 316 SE 2d 681.

-22-

On Nov. 14, 2019 I petitioned the Court with a Motion For Proper Relief requesting that the Court subject the Solicitor on my case to contempt proceedings, due to the violation of this section and not indicting me within the 90 day time period as well as neglecting to file any written notices of extensions for their violation, but all this was intentionally and purposely neglected by the Deputy Clerk of Court Pam Haynesworth refusing to file and submit my motion to the Court, stating an alleged local Third Judicial Circuit rule she claims states that there can't be any hybrid representation meaning I couldn't file any motions on my own behalf if I was represented by a court appointed attorney or a public defender which is in direct violation of the rights afforded to me by the S.C. State Constitution Article I, section 14. which clearly states that; Any person charged with an offense [shall] enjoy the right to be [fully] heard in his defense [by himself] or by his counsel or [by both] (1970(56) 2684; 1971(51) 315.) and this is protected by Article I, Section 3. The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, [liberty], or property without due process of law, nor shall any person be denied the equal protection of the laws. (1970(56)2684; 1971(57) 315.) and Article I, Section 23. The provisions of the Constitution shall be taken, deemed, and construed to be [mandatory] and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms. (1970(56)2684; 1971 (57) 315.), but all this was intentionally and purposely neglected by the Court through the Deputy Clerk of Court of Sumter County Pam Haynesworth.

The Due process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings, See US v. Lovasco,

-24-

431 U.S. 783 (1977). The Court's function, however, is not to slap the Government on the wrist for sloppy work or misplaced priorities, but to protect the legal rights of these individuals harmed thereby. Barker v. Wingo stressed that official bad faith in causing delay will be weighted heavily against the government, 407 U.S., at 531, and a bad faith delay the length of this negligent one (31 months) would present an overwhelming case for dismissal. (Please Refer to Exhibit J),

③ During this pretrial delay in Sept. 2018 I was appointed the Chief Public Defender of Sumter County Timothy W. Murphy by the State of South Carolina in which during the entire 13 months he was appointed to me. I've seen him twice once during my preliminary hearing in which I got to speak to him for five minutes after the hearing still in the courtroom at the table and the second time at the S.L.R.D.C. after I had filed a Motion For Nelson Hearing to have him removed off of my case for negligence and ineffectiveness and he came with the physical Motion I sent to the Court in hand demanding an explanation in which I explained that he has been appointed to me over a year at this time and this was the second time I actually seen and spoken to him and that he sent me a letter back on Jan. 31, 2019 alleging he spoke with Atty. Deborah Butcher about my case and she indicated that she simply spoke to some of the witnesses, but did not take any formal statements when I spoke to her personally on the phone in Feb. 2019 to inform her my family was still working on her retainer so she could become my attorney of record in this case and I informed her of what Mr. Murphy had informed me and she informed me that she never told him that she didn't get formal statements from

-25-

the witnesses and that last she checked they still don't have any discovery in my case ready as of yet, so she had no clue what he was refering to, when Mr. Murphy also had stated in my letter that he had recently received discovery and will visit me after he had time to study it, which was a lie - that was revealed when I received my discovery in my case for only the two forgeries on this same day I saw him for the second time because in my discovery It was a Rule 5 Disclosure and Motion For Reciprocal to MR. Murphy on my behalf from Asst. Solicitor Bronwyn McElveen for only warrant No(s): 2018A4310100681 and 2018A4310100682 dated on April 25, 2019; and MR. Murphy filed an acceptance of service on Apr. 26, 2019 (Please Refer to EXHIBITS B, C, AND D).

Then on Oct. 10, 2019 I was transfered to the Sumter County Courthouse from the S.L.R.D.C. for a bond hearing before Judge Hyman an out of Circuit Judge from Horry County in general sessions court with Mr. Murphy intentionally and purposely neglecting to notify me of this Court date so that I could have my family and witnesses on my behalf in Court for my defense and support when someone conviently notified the victim's family due to the fact they were present at the hearing and allowed to speak and then my bond was denied. MR. Murphy intentionally and purposely brought me before this judge to be denied due to the fact MR. murphy was well in acknowledgement that this Judge did not grant bond when he was out of his circuit and this was confirmed by a letter from my roommate's public defender Michael D. Rutzang who works under Mr. Murphy dated Oct. 8, 2019 two days before my bond hearing date informing my roommate that he didn't try to move for a bond this term, since it would have been denied because Judge Hyman

—26—

Will not grant any bonds and he would have to wait another 180 days passed before he could go back up for a bond. So there is no way possible with Mr. Murphy being the Chief Public Defender at the time and my roommate's public defender's supervisor that he had no knowledge of this information, (Please Refer to Exhibit F), Then the next day I'm ~~interviewed~~ interviewed by a private investigator Mr. Murphy sent to interview me at the S.L.R.D.C., so I called him to question him about all these negative allegations and he conviently informs me that he's no longer my attorney due to a conflict discovered within his office and just hung up on me, after he's been my attorney for over a year and this damage has been done in my case due to his negligence and ineffectiveness.

According to the South Carolina Commission on Indigent Defense Standards for Public Defenders and assigned counsel (non-capital) Effective Dated July 1, 2013 the following should apply:

① Guideline 1.1. Role of Defense Counsel

(a) The paramount obligation of criminal defense counsel is to provide zealous and quality representation to their clients at all stages of the criminal process. Attorneys also have an obligation to abide by ethical norms and act in accordance with the rules of the court. Once representation has been undertaken, the functions and duties of defense counsel are the same whether defense counsel is assigned, privately retained, or serving in a legal aid or defender program:

(c) Defense counsel should seek to reform and improve the

—27—

administration criminal justice. When Inadequacies or Injustices in the substantive or procedural law come to defense counsel's attention, he or she should stimulate efforts for remedial action;

② Guideline 1.3, General Duties of Defense Counsel

(e) Defense Counsel should not intentionally misrepresent facts otherwise mislead the Court;

③ Guideline 2.1. General Obligations of Counsel Regarding Pretrial Release — the attorney has an obligation to attempt to secure the pretrial release of the client under the conditions most favorable and acceptable to the Court. But, all these facts were intentionally and purposely neglected by MR. Murphy in my case causing me emotional distress, mental anguish, and anxiety from further being restricted of my liberty, being forced to being a victim of continued undue and oppressive incarceration, and potential prejudice to my ability to defend my case by a Chief Public Defender that was appointed to me by the State of South Carolina which cause diliberate harm to my defense and liberty,

Also, at this bond hearing on Oct. 10, 2019; Assti Soliciter Bronwyn Mcelveen intentionally and purposely committed perjury by stating that I fought extradiction to come back to South Carolina to face these disclosed pending charges, when I was apprehend in Florida by the US Marshals, I willing signed the waiver for extradiction and was extradicted the day after my first apperance in Court in Florida, that I took Georgia authorities on a high speed chase and eluded them and that she had positive ID via authorities in Georgia body cams, when I was never apprehended in

-28-

Georgia nor was I ever charged with eluding any authorities whatsoever, and she told the Court that I was sentenced before her several of times in the past, when I only had one case in Sumter period and that was in front of her, and she stated these false and misleading statements under oath to intentionally and purposely mislead the Court from granting me a bond which caused deliberate harm to my defense and liberty at this bond hearing.

This intentional negligence of asst. McElveen was in direct violation of the South Carolina Criminal Code Section 16-9-10. Perjury and Subornation of perjury. (A)(1) It is unlawful for a person to willfully give false, misleading, or incomplete testimony under oath in any court of record, judicial, administrative, or regulatory proceeding in this State, and (B)(1) A person who violates the provisions of subsection (A)(1) is guilty of a felony and, upon conviction, must be fined in the discretion of the Court or imprisoned not more than five years, or both.

All the violations disclosed in this section was disclosed in my Motion For Proper Relief submitted to the Court on Nov. 14, 2019, but all was neglected due to the Deputy Clerk of court Pam Haynesworth intentionally and purposely neglecting to file my motion with the Court alleging a local alleged third Judicial Circuit Rule stating no hybrid representation which would be in direct violation of my right afforded to me by the S.C. State Constitution Article I, Section 14 that clearly states that, Any person charged with an offense [shall] enjoy the right to be heard in his defense [by himself] or by counsel, or [by both,] (1970(56)2880; 1971(57) 315) But, all this was intentionally

-28-

and purposely neglected by the Court through the Deputy Clerk of Court to further delay my case and my chance at liberty for the State to gain a tactical advantage over me in defense of my case. (Please Refer to EXHIBIT J).

(4) During this pretrial delay Chief Public Defender Timothy W. Murphy did file a Request and Motion under Rule 5. For Discovery motion pursuant to Brady and written objection under Rule 6 to the Solicitor of the Third Judicial Circuit and it was recorded on Oct. 15, 2018 at 11:37 am in the Clerk of Court of Sumter County and he received a response six months later on April 25, 2019 from Bronwyn K. McElveen, Asst. Solicitor for only warrant No (s) 2018A431010006Gl AND 2018A43101000682 intentionally and purposely neglecting the other three warrant No. (s) 2018A431010006670, 2018A4310100696, and 2018A43101000697 to gain a tactical advantage over me in defense of my case. And it has now been over 30 months since Mr. Murphy's motion For Request and Motion under Rule 5 For Discovery for the above disclosed warrant No. (s) and still have not received service of Rule 5 discovery for warrant No (s) 2018A431010006670, 2018A4310100696, AND 2018A43101CLC 697 (PLEASE REFER TO EXHIBITS A, C, AND D).

According to the SC Rules of Criminal Procedure Rule 5. Section (a) Subsection (3) TIME FOR DISCLOSURE. The prosecution shall respond to the defendant's request for disclosure no later than thirty (30) days after the request is made, or within such other time as may be ordered by the Court. But, this was intentionally and purposely neglected by asst. Solicitor Bronwyn McElveen to intentionally and purposely gain tactical advantage over me in this case and to cause deliberate harm to my defense,

which prejudices my ability to prepare an adequate defense.

⑤ During this pretrial delay after my denied bond hearings and Chief Public Defender Timothy W. Murphy stating after a year and after causing all type of prejudices to my case, that due to a conflict discovered within his office that he was no longer my attorney of record and hung up on me over the phone on Oct. 11, 2019. I filed multiple motions on my own behalf to be filed and submitted to the Court and Solicitor's Office to be heard in my defense on my case, such as a Notice and Motion to Dismiss, Notice of motion and Motion For Bond Reconsideration, Motion For Proper Relief, Notice of Motion and Motion For Emergency Bond Reconsideration in consideration of COVID-19 Pandemic, and two Motions For Speedy Trial's when I didn't receive any feed back or relief from the Court on the other motions. (Please Refer TO EXHIBITS G, J, K, N, and O).

On Jan. 8, 2020 I was visited by my new appointed attorney Timothy L. Griffith one of the Sumter County Contract Attorneys and at this visit at the Sumter-Lee Regional Detention Center he informed me that he had just filed with the Court and served upon the Solicitor's Office a motion to Dismiss and Motion For Hearing under Ducan on Immunity By Self Defense/ Stand Your Ground to be heard before the Court in the next 30 to 60 days and the he provided me with a copy of the motion that he had filed. (Please Refer to EXHIBIT M).

After Attorney Timothy L. Griffith presented me with the motion to Dismiss and Motion For Hearing under Ducan on Immunity By ~~~~ Self Defense/Stand Your Ground we went over what to expect at this hearing and when Mr. Griffith was about to leave he told me to stop filing motions with the Court because he's been contacted by the Clerk of Court Office about all my motions and he said they considered all of the frivilous due to no hybrid representation

- 31 -

in the State of South Carolina meaning I couldn't file motions on my own behalf when I was represented by an appointed attorney or public defender. When I got back in my Pod I called the clerk of court office and Deputy Clerk of Court Pam Haynesworth answered and I asked why wasn't my motions filed with the Court on the disclosed pending charges and she said that there is no hybrid representation in the State of South Carolina, and that I had to get my attorney to file motions on my behalf or I would have to represent myself for my motions to be filed with the Court.

The actions and inactions of the Court through Deputy Pam Haynesworth was in direct violation of the rights offered to me by the South Carolina State Constitution Article I, Section 3. The privileges and immunities of citizens of this State and the United States under this Constitution [shall not be] abridged, nor shall any person be deprived of life, [liberty], or property without due process of law, nor shall any person be denied the equal protection of the laws. (1970 (56) 2684; 1971 (57) 315.), Article I, Section 9. All courts shall be public, and every person [shall] have speedy remedy therein for wrongs sustained., Article I, Section 14. Any person charged with an offense shall enjoy the right to be fully heard in his defense [by himself] or by his counsel or [by both.] (1970 (56) 2684; 1971 (57) 315.), and Article I, Section 23, the provisions of the Constitution [shall be] taken, deemed, and construed to be [mandatory] and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms. (1970 (56) 2684; 1971 (57) 315.)

When it comes to a Speedy Trial one of the main factors is the assertion of the defendant's right and I clearly asserted my right to a

speedy trial when I filed and submitted both of my Motion's For Speedy Trial to the Court and also served both of them upon the solicitor's office one on Dec. 11, 2019 and the second one on June 28, 2020, when they both were intentionally and purposely denied by the Court through the Deputy Clerk of Court Pam Haynesworth alleging that there was no hybrid representation in the State of South Carolina causing me a delay of my case so that the State could gain tactful advantage over me in this case, and if my first Motion For Speedy Trial was properly filed on Dec. 11, 2019 by Deputy Clerk of Court Pam Haynesworth in compliance with the South Carolina Constitution instead of upholding some alleged local third judicial rule she has not yet disclosed to my persons, my case would have been properly dismissed in June 2020 for the 180 days speedy Trial violation. The delay in my case is long enough to be "presumptively prejudicial" especially when the delay clearly was attributable to the negligence of the State and the Court through the Deputy Clerk of Court Pam ~~Haynesworth~~ Haynesworth. (Please Refer to Exhibits K and O)

Even after the Court through the Deputy Clerk of Court Pam Haynesworth denying my motions to be filed due to the alleged local Circuit rule of no hybrid representation, the Court still to this date of this Motion have not heard the Motion in which my court appointed attorney of record at the time Timothy L. Griffith had filed on my behalf on Jan. 8, 2020 which has now been neglected and delayed over 14 months alone causing my persons emotional distress, mental anguish, and anxiety and concern due to the fact due to this lengthy delay for this Motion to be heard it has deprived me of witnesses that now can longer be located and has interfered with my ability to properly defend myself and have prejudiced me in a number of other ways. The Court had plenty of time before the COVID-19 pandemic

-33-

Came into play around March 20, 2020 to hear my attorney's motion in a timely fashion since it was filed on Jan. 8, 2020, but this was all intentionally neglected. Excessive delay can compromise a trial's reliability in unidentifiable ways. Presumptive prejudice is part of the mix of relevant Barker v. Wingo facts and increases in importance with the length of the delay. The negligence in my case delay is 2 times as long as that generally deemed sufficient to trigger judicial review the negligence in Doggett v. U.S. (1991) was 6 times as long which was 102 months / 8 1/2 years, And the negligent delay to hear the motion under Dixon in which Mr. Griffith had filed on my behalf on Jan. 8, 2020 to present is 14 months alone. (Please Refer to Exhibit M).

⑥ During this pretrial delay in my case from Aug. 15, 2018 to present I was violated on my 5 year suspended to 2 years of probation from Lee County for Presenting false claims for insurance payment value less than $10K before the Honorable Judge Cothrane and I was fully revocated and sentenced to five years; due to the nature of the pending charges and before formal disposition of this case, and I was transfered to to the South Carolina Department of Corrections (S.C.D.C.) on Nov. 16, 2018 with an active detainer lodged against me for the disclosed pending charges from the SLSC and I was transfered to Lieber State Prison a level 3 maximum prison in SCDC to serve my probation violation 5 year sentence where I was house in a dorm with sentenced offenders that had 20 or more years; in which I was assigned to a cell with I/m Andrew Flowers who was already at the time been incarcerated for 27 years, and 17 of them years at Lieber State Prison alone. While at Lieber State Prison during this term period I was a victim

—34—

Of retaliation of a I/m whom is a family member of the victim of my pending case stabbed me with an ice pick not understanding that he cousin was killed in self-defense in which I was stand my ground. If it wasn't for the active detainer for the disclosed pending charges I wouldn't had been retaliated against or stabbed with the ice pick and I would have been classified as MRIB minimum custody and would have been transferred to a level 1 prison work release prison in SCDC to serve my probation violation 5 year sentence for the non-violent offense of presenting false claim to insurance payment value less than $10K. So I was forced to undue and oppressive incarceration until I was granted parole in Aug. 2019 and actually paroled on Sept. 16, 2019 and transferred back to the S.L.R.D.C. on my active detainer from ███ the S.C.S.O. on the disclosed pending charges. (Please Refer to Exhibit E).

    Once back at the S.L.R.D.C. after I was booked in and took my booking photo with my religious headwear on, it was confiscated and placed in my personal property and I was denied to wear my religious headwear in their facility per their alleged policy, when I was being transferred from SCDC and have been at several other South Carolina pretrial detention centers and jails while I was in federal transit as well as while I was in the FBOP and not one of these facility's ever confiscated and denied me the right to wear my religious headwear and when I asked to be provided with a copy of the facility's policy pertaining to Religion, I was told that it was restricted to I/m's, because it was a security threat to their facility and ofc's if I/m's were permitted to view their policy. I was also forced to remove foods I was allergic to off of my trays and denied a substitution for foods I was allergic to in which was filed with medical, when other I/m's allergic foods were being substituted for their allergies when all of our food allergies were documented

-35-

and filed in medical and food service. Enduring this discrimination and all these violations has caused me mental anguish, emotional distress, and anxiety due to this ▓▓▓▓ continuous undue and oppressive incarceration.

In Aug. 2020 I was reclassified to a Max classified I/m at the S.L.R.D.C. and due to the fact the facility doesn't have a Pod for their Max, Medical, and Juvenile classified I/m's; we are forced to be housed in B-POD(SMU) lock ▓▓▓ up with the facility's disciplinary sanctioned classified I/m's and we are treated the same as a disciplinary sanctioned classified I/m with no priviledge of television and only being permitted one hour of rec. time three days a week (Mon, Wed, Fri.) in which we have to choose from showering, using the telephone, outside rec, or using the Kiosk for no other reason then us being classified as a Max, Medical, or Juvenile classified I/m and the facility not having any other Pod to house us and the facility state their policy states that every I/m housed in B-POD(SMU) must be treated like this as well as being rechained and shackled up whenever we are permitted out of our cells when the Max, Medical, and Juvenile classified I/m's have not committed any disciplinary infractions to be treated as if we're disciplinary which is discriminatory toward the Max, Medical, and Juvenile classified I/m's when the Med, Federal, Trustee, and Women classified I/m's are permitted the priviledge of daily television use, daily phone use, daily showers, daily outside rec, and daily Kiosk use from 8AM to 12:30PM, 2:30PM to 4:30PM, and 7PM to 11PM seven days a week and the fact sentenced ▓▓▓ Super Max and Death Row I/m's in the state receive an hour of rec daily seven days a week as well as the priviledge of television, when we are pre-trial detainees and are being usually punished, discriminated against, and treated like this solely based on our

—36—

Classifications as Max, Medical, and Juvenile classified I/m's. The facility is also discriminating against the entire B-POD (smu) I/m population versus the Med, Federal, Trustee, and Female classified I/m's by denying us the same rights of grooming via haircuts, having our uniforms, sheets, blankets, bedspreads, and cells cleaned on a regular basis, and receiving a beverage with our meals as the Med, Federal, Trustee, and Female classified I/m's of the facility receive.

In Jan. 2021 the S.L.R.D.C. received a new Director, Dir. Ray who on March 5, 2021 in B-POD (smu) implimented a new rule to the facility's policy exclusively in which she is using the method of denying us meals as a form of punishment if we have our cell door windows or lights covered up in our cells for now on.

This undue and oppressive incarceration since Sept. 2019 has caused me emotional distress, mental anguish, anxiety and other grievous injury which forced me to file a 1983 Civil Action Complaint on March 5, 2021 in the U.S. District Court, in the district of South Carolina due to the facility and its ctc's inflicting us with cruel and unusual punishments, violating our due process rights, and discriminating against us in violation of our equal protection of the laws.

The Court have long identified the "major evils" against which the Speedy Trial Clause is directed as "undue and oppressive incarceration" and the "anxiety and concern accompanying public accusation." U.S. v. Marion, 404 U.S. 307, 320 (1971). The Court does not, and cannot, seriously dispute that these two concerns lie at the heart of the clause. Unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the the accused", and "the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." The

Clause is directed not generally against delay-related prejudice, but against delay-related prejudice to a defendant's liberty. [The speedy trial guarantees is to minimize the possibility of lengthy incarceration prior to trial,] to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an _accused_ while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. U.S. v. MacDonald, 456 U.S. 1, 8 (1982). A lengthy pretrial delay, of course, may prejudice an accused's ability to defend himself. But, the Court has _explained_, prejudice to the defense is not the sort of impairment of liberty against which the Clause is directed. "Passage of time," whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses and otherwise interfere with his ability to defend himself. Even though a defendant may be prejudiced by a pretrial delay, and even though the government may be unable to provide a valid justification for that delay, the Clause does not come into play [unless] the delay impairs the defendant's liberty in which it did in my case. In Barker v. Wingo, 407 U.S. 514, 532 (1972), the Court asserted that the Clause was "designed to protect" three basic interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." See also Smith v. Hooey, 393 U.S. 374, 377-378 (1969); U.S. v. Ewell, 383 U.S. 116, 120 (1966).

⑦ During this pretrial delay since the issuance of warrant No. 2016 A4310100670 on Aug. 11, 2018 I've been a victim of slanderous statements made to the public by Sheriff Dennis in multiple town hall meeting on

-38-

Facebook and news conferences attacking my way of life and religious belief as a moor and of Islam stating that I was a Soverign Citizen that killed in Cold Blood and that I was armed and dangerous when this case was an isolated incident and he also stated that as a part of the moor way of life that we didn't abide or ~~respect~~ respect the laws of the land and that we were considered domestic terrorists; these statements along with the addition of pretrial delay has caused me and my family to lose our local business and eviction of our local residence due to public accusation of these public statements which has caused me mental anguish, emotional distress, and ~~anxiety~~ anxiety and concern accompanying public accusation.

The Speedy Trial Clause protects an accused from two additional harms: (1) Prejudice to his ability to defend himself caused by the passage of time; and (2) disruption of his life years after the alleged commission of his crime; which in my case it's been over 32 months and still counting. The Court have long indentified the "major evils" against which the Speedy Trial Clause is directed as "Undue and oppressive incarceration" and the "anxiety and concern accompanying public accusation," U.S. v. Marion, 404 U.S. 307, 320 (1971). The Court does not, and cannot, seriously dispute that these two concerns lie at the heart of the Clause.

(8) On March 11, 2021; I filed and submitted a "Motion To Dismiss For Violation of Constitutional Due Process and Speedy Trial Provisions," to the Supreme Court of South Carolina, exhausting my state administrative remedies in this case; and on March 22, 2021 I received correspondence from the Supreme Court of South Carolina Clerk of Court Daniel E. Shearouse stating

that since I am represented by counsel in these matters, no action will be taken on my pro se filing; citing Miller v. State, 388 S.C. 347, 697 S.E. 2d 527 (2010); Jones v. State, 348 S.C. 13, 558 S.E. 2d 517 (2002); State v. Stuckey, 333 S.C. 56, 508 S.E. 2d 564 (1998); Foster v. State, 298 S.C. 306, 379 S.E. 2d 907 (1989); and also stating that since I was represented by counsel in this matter, they were forwarding a copy of my motion to my counsel for any assistance he/she can give me. But, the Clerk of Court cc'd everything not only to my attorney of record Atty. Deborah J. Butcher as said, but also to the Solicitor in my case Bronwyn K. McElveen, asst. solicitor of the third judicial circuit, and to Atty. Timothy W. Murphy the Chief Public Defender who has not been an attorney of record on my case since Oct. 2019 over a year and a half ago due to a conflict within his office. (Please Refer to Exhibit P).

   The actions/inactions of the State Supreme Court, Clerk of Court Daniel E. Shearouse intentionally and purposely not taking action in filing my "Motion To Dismiss For Violation of Constitutional Due Process and Speedy Trial Provisions" with the Court was in direct violation of my State and Federal Constitutional rights afforded to me under the due process clause; due to the fact under the SC state Constitution I'm entitled to be fully heard in my defense by myself, by counsel, or by both, but yet this has been neglected intentionally and purposely by the SC Supreme Court through it's Clerk of Court, Daniel E. Shearouse directly in violation of the rights afforded to me by the South Carolina State Constitution, Article I, subsection 3, The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or

-40-

property without due process of law, nor shall any person be denied the equal protection of the laws. (1970(56)2684; 1971 (57) 315.), Article I, Subsection 14. Any person charged with an offense shall enjoy the right to be fully heard in his defense [by himself] or by his counsel or [by both,] (1970(56)2684; 1971 (57) 315.), Article I., subsection 23. The provisions of the constitution shall be taken, deemed and contrued to be mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms. (1970(56)2684; 1971 (57) 315.), and the Fourteenth Amendment of the United States Constitution, No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws; but yet all of this was intentionally and purposely neglected by the Supreme Court of South Carolina through its Clerk of Court Daniel E. Shearouse denying and refusing to take action and file my submitted motion in defense of my violated due process and speedy trial constitutional provisions to intentionally and purposely further delay my case and my chance at liberty for the State to gain a tactical advantage over me in defense of my case. The Due process Clause always protects defendants against fundamentally unfair treatment by the government in criminal proceedings. See U.S. v. Lovasco, 431 U.S. 783 (1977).


CONCLUSION


I have concluded in this hereby foregoing motion and displayed to the Court that my case meets all the criterias for evaluating speedy trial

−41−

Claims which are found in Barker v. Wingo, 407 U.S. 514, 530 and Stewart v. Nix, 972 F.2d 967, 970 (8th Cir. 1992), as well as the two additional harms in which the Speedy Trial Clause protects an accused ① prejudice to his ability to defend himself caused by the passage of time; and ② disruption of his life years after the alleged commission of his crime, I have also have shown the Court that my case contains "undue and oppresive incarceration" and that I suffer from "anxiety and concern accompanying public accusation", which the Court have long identified as "major evils" against which the Speedy Trial Clause is directed in which the Court does Not, and cannot, seriously dispute that these two concerns lie at the heart of the Clause. U.S. v. Marion, 404 U.S. 307, 320 (1971), as well as the major fact that it is proven that my pretrial delay has now been over 31 months 2 times as long as that generally deemed sufficient to trigger judicial review, and the Speedy Trial Clause's core concern is impairment of liberty. U.S. v. Loud Hawk, 474 U.S. 302, 312 (1986). Whenever a criminal trial takes place long after the events at issue, the defendant may be prejudiced in any number of ways. The negligence in Doggett v. U.S. (1991) was six times as long that generally deemed sufficient to trigger judicial review which was 102 months / 8½ years. So based on these facts of my conclusion and upon the disclosed case history facts time line; grounds, legal authority, and Constitutional law with arguments I Demetrius Alexander Brown, the petitioner, in this hereby foregoing Motion prays with judicial fairness that this Court shall grant this hereby foregoing Motion to Dismiss For Violation of Constitutional Due Process and Speedy Trial Provisions

Under the Sixth And Fourteenth Amendments Afforded under 28 U.S.C § 2241, as soon as practical due to the fact the Sixth Amendment to the United States Constitution guarantees an accused a speedy trial, which right is enforced against the States under the Fourteenth Amendment. Koper v. North Carolina, 386 U.S. 213, 223, 87 S. Ct. 988, 993, 18 L.Ed. 2d 1 (1967), Upon the petitioner's demand, the state has a "constitutional duty to make a diligent, good faith effort to bring him before the court for trial." Smith v. Hooey, 393 U.S. 374, 383, 89 S. Ct. 575, 579, 21 L, Ed. 2d 607 (1969). But, this was all intentionally and purposely neglected by the lower Court in my case through the Deputy Clerk of Court Pam Haynesworth denying to file my multiple motions which is of no fault of mine and the COVID-19 pandemic can not justify the extent of the delay in this case challenged by me; due to the fact "there is no pandemic exception to the Constitution." Carson v. Simon, 978 F. 3d 1051, 1060 (8th Cir. 2020). The federal Constitution, while flexible, does not allow a blanket refusal to afford defendants their right to a speedy trial, The State of South Carolina cannot "take advantage" of it's own failures to follow scientific facts and safeguards in entering blanket denials of the rights of speedy trials when they decided to shut down and no conduct in persons trials from March 2020 to ~~April~~ April 2021 due to the COVID-19 pandemic which does not excuse South Carolina courts compliance with a detained defendant's Sixth Amendment right to a speedy trial, Kurtenbach v. Howell (2020). So basically such delay in my case cannot be solely attributable to me the petitioner.

-43-

I DEMETRIUS ALEXANDER BROWN, hereby certify under perjury Statutes of the law that the facts and statements disclosed in this hereby foregoing Motion are true and correct to the best of my knowledge.

SO IT IS SAID AND SUBMITTED TO THE COURT ON THIS 30th DAY OF MARCH , 2021.

RESPECTFULLY SUBMITTED,

X _____

DEMETRIUS ALEXANDER BROWN

SUMTER-LEE REGIONAL DETENTION CENTER

MARCH 30, 2021

1250 WINKLES ROAD

SUMTER, SC.

SUMTER, SC 29153

SWORN TO AND SUBSCRIBED BEFORE ME THIS 30 DAY OF March , 2021.

_____

SIGNATURE OF NOTARY PUBLIC

10/16/2025

MY COMMISSION EXPIRES

— 44 —